MARIANNA HOTEL COMPANY *v.* LIVERMORE FOUNDRY
& MACHINE COMPANY.

Opinion delivered March 3, 1913.

1. MECHANICS LIEN—CONTRACT.—When a material man agreed with a contractor in writing to furnish structural iron, and at the same

time agreed orally to furnish sash weights, for the purpose of acquiring a mechanic's lien, the contract is to be treated as one contract, and is not a case within the prohibition against varying a written contract by parole. (Page 254.)

2. MECHANICS LIEN—CONTRACT—LIMITATIONS.—The date from which the limitation of the time of filing a mechanics' lien is to be taken is the date on which the last article is furnished under the contract. (Page 254.)

3. MECHANICS LIEN—RIGHT TO LIEN.—Where it appears that plaintiff furnished the materials used in defendant's building, that the amount charged for same was less than the contract price for the construction of the building, and has not been paid, he has established a *prima facie* right to a lien on the building for the balance due, and the burden is on defendant to show that plaintiff is not entitled to a lien. (Page 254.)

4. MECHANICS LIEN—RIGHT OF MATERIAL MAN.—Where the owner paid money to the contractor with which to pay laborers and material men, and the contractor converted it to his own use, and abandoned the contract, and the cost of the completion of the building with the payments made exceed the contract price, the claims of a material man must be pro rated with other claimants. (Page 254.)

5. TRIAL—CONFLICTING INSTRUCTIONS—CURE.—When an incorrect instruction is given, the error is not cured by the giving of a correct instruction; when there are conflicting instructions, the jury is without a correct guide. (Page 255.)

6. MECHANICS LIEN—EVIDENCE—ADMISSIBILITY.—In an action to enforce a mechanics lien, where the amounts paid the contractor for laborers and material men, and the amount necessary to complete the work, after the contractor has abandoned the same, are in excess of the original contract price, it is proper to admit evidence of the filing of other liens, the same being material to the question of pro rating the claim of the plaintiff and other claimants. (Page 255.)

Appeal from Lee Circuit Court; *Hance N. Hutton*, Judge; reversed.

STATEMENT OF FACTS.

This is a suit by the appellee against the appellant in the Circuit Court of Lee County to have a judgment for building material furnished by the appellee which it alleged was used in a certain hotel building belonging to the appellant. The complaint set up that the material was furnished to B. M. Nelson, the contractor, who had been employed by the appellant to construct the

building in the city of Marianna. The complaint was filed on the 27th of July, 1911. It had as an exhibit an itemized account showing a balance due for materials furnished in the sum of $412.79. There was a prayer for judgment in this sum, and that same be declared a lien upon the building.

The answer denied the material allegations of the complaint. Denied that the materials were furnished within ninety days before the suit was brought and the lien filed. It set up that all of the material furnished by the appellee under its original contract was sold on November 30, 1910; that the small amount for sash weights, $77.87, was furnished on April 29, 1911; and it averred that all except this amount was out of date and barred; that the other material included in the account was furnished under a different contract. The answer also set up that there had been payments made upon the account leaving a balance due January 30, 1911, of $334.92. The answer further set up that the contractor abandoned his contract before the building was completed and that the appellant was compelled to complete the building, and did so according to the original plans and specifications, paying therefor a greater sum than the original contract price. It averred that it had paid no part of the contract price to the contractor for his own use. It alleged that it had paid the sum of $23,442.48 in strict accordance with the terms of the contract before the contractor abandoned the same, and that it had paid $7,346.20 to complete the building according to the original plans and specifications.

The manager of the appellee testified that appellee's account was for structural iron and some other small articles furnished the contractor for appellant's building; that the largest item of the account was for structural iron furnished on November 30, 1910.

The material was all used in the building. The last shipment was made May 2, 1911. The account shows that on April 29 there was furnished sash weights amounting to $77.87. Witness testified that the struc-

tural iron was furnished under a written proposal made by his company to the contractor, which he accepted on condition that the company would furnish sash weights at a certain price. The company agreed to that and agreed to protect him on the price on a rise in the market. There was nothing said about that in the written proposal nor in the acceptance endorsed on the proposal. There was but one contract; that was in writing, regarding the structural iron. The contractor signed an acceptance and put his name on the proposal and put it there upon that condition. But this condition was not in the proposal or in the acceptance endorsed on the back thereof. The sash weights are not classed as structural iron.

Witness stated that "the condition of his (the contractor's) giving the written contract for the structural iron was that we were to protect him on the rise in the price of certain window weights, and furnish them to him at a certain market price. We agreed verbally that when he ordered these window weights that we would protect him."

The testimony on behalf of the appellant tended to show that it entered into a contract with one B. M. Nelson to construct the hotel building for the price of $26,185. The contractor abandoned the contract before the building was completed.

The testimony was voluminous, and without setting it out in detail, it tended to show that the sum of $23,-342.48 was paid in checks at the time the contractor quit work, and that this amount was paid to the material men and laborers. Most of the checks state on their face for what purpose they were issued. They were made payable to the contractor, but went to the material men and laborers.

The evidence tended to show that the money was paid out by the appellant to the contractor before he quit work, towit, the sum of $23,342.48, for the purpose of paying for material and labor that went into the build-

ing, and that none of it was paid to the contractor for his own use.

The appellee, over the objection of appellant, introduced testimony tending to show that the contractor on one occasion took $62.50 out of the sack that contained the pay roll money and converted it to his own use by paying same on a private debt for money borrowed.

The testimony on behalf of the appellant tended to show that it paid out after the contractor abandoned the contract the sum of $7,346.20 for the completion of the building. A witness was asked the following question: "Was that building completed according to the plans and specifications?" and answered, "Practically so. After we took charge we made one or two changes. Things not made before. We changed the tile in the lavatory and put some cement in the columns that was not in the original contract, and I don't recall anything else. The heating was changed and pipes put through underground."

Witness testified that there was no difference in the cost of the tiling.

There is a stipulation in the record as follows:

"After the court had declared the law as shown by the instructions the defendant offered to introduce a witness, W. S. McClintock, for the purpose of showing by the said W. S. McClintock that there are now pending the following actions against the hotel company for the purpose of enforcing accounts and claims for liens against the said hotel building, and that liens upon said accounts had been filed as provided by law in the Lee Circuit Court, as follows: W. F. Kershaw $569.95, Carl Sutton $49.60, and a suit in the United States District Court by Crane Company seeking to enforce a lien amounting to $3,013.97."

The court refused to allow the testimony to be introduced, to which appellant duly excepted.

The court, at the request of appellee, granted, among others, the following prayers:

"1. You are instructed that if you find from the

evidence that plaintiff filed this action within ninety days from the date it furnished the last material to the defendant it is not necessary to give the ten days' notice as provided by the statute, or file its amount with the clerk as provided by the statute.''

''2. If you find from the evidence that plaintiff furnished the materials as alleged in the complaint; that the same were used in the building of the defendant and that the amount charged for said material was less than the contract price for the construction of said building and has not been paid, then plaintiff has established a *prima facie* right to a lien on said building for the balance due it, and casts the burden of proof on defendant to show that plaintiff is not entitled to a lien, provided this suit to recover said money due and established said lien was filed within ninety days after the last material was furnished.''

''3. You are instructed that if you find from the evidence that defendant paid B. M. Nelson, the contractor, any moneys which were used by him for other purposes than the payment of debts due for labor or material used in the construction of the building, then you will find for plaintiff, provided such sums paid to the said Nelson are in excess of the amount of plaintiff's claim. If you find the sums of money paid said Nelson less than the amount of plaintiff's claim you will find for plaintiff for such amount.''

''4. You are instructed that even though you find from the evidence that the defendant has expended in the construction of its building more than the amount originally contracted therefor, such finding will not defeat the plaintiff's right, as the plaintiff would be entitled to *pro rate* with all lien holders. To arrive at the ratio of payment due all lien holders you will deduct the amount necessary to complete the building from the original contract price, and add thereto any amount you find was paid by the defendant to the contractor and used by him for purposes other than the payment of liens on the building. This will be the amount to be *pro rated*

among the lien·holders. The amount of liens to be allowed are the amounts paid out by the contractor before the abandonment of the original contract, and the amount of plaintiff's claim herein.''

''6. You are instructed that it is incumbent on the defendant to show that any moneys paid out directly to the contractor Nelson were used by him for the purpose of paying for labor done and material furnished on defendant's building.''

''7. You are instructed that the issuance of checks by the hotel company payable to the contractor, B. M. Nelson, and his endorsement thereon, showing that he received the proceeds of said checks, is *prima facie* evidence of the payment of the proceeds of such checks to the said Nelson and the burden of proof is on the defendant to show that the moneys received by the said Nelson were paid for labor done on said building or for materials used in the construction thereof.''

The court refused the appellant's prayers for instructions, as follows:

''1. If the jury find from the evidence that the contract for the iron work was made by a written proposal and acceptance and that some verbal agreement was at the same time made about the price of sash weights and that the said sash weights were subsequently ordered by Nelson, and sold to him by the plaintiffs, there was two separate contracts, and if you find that the iron work was delivered more than ninety days before plaintiff filed its lien, the plaintiff is barred as to the account for the iron work.''

''2. If the jury find from the evidence that the contract of Nelson was for $26,185 and that he failed to complete the building and that the defendant took charge of the building and completed it according to the plans and specifications, and that the amount of moneys paid out by the hotel company for labor and material exceeded the amount of the contract you will find for the defendant.''

The court granted appellant's prayers for instruc-
tions as follows:

"3. If the jury find from the evidence that the
hotel company paid to Nelson individually any money
for pay rolls and material, and that such pay rolls and
material were estimated by the superintendent and were
for the correct amounts and that the hotel company en-
trusted the same to Nelson to carry to the laborers and
Nelson misappropriated part of the funds, the hotel
company would not be responsible for the same to any
contractor or debtor of Nelson except the laborer to
whom the money was sent."

"4. The hotel company would not be responsible
in any event to any person for moneys entrusted to Nel-
son and wrongfully appropriated by him further than
the amount actually shown to have been misappro-
priated."

There was a verdict and judgment in favor of ap-
pellee for $448.70 and the appellant duly prosecutes this
appeal.

*F. N. Burke* and *H. F. Roleson,* for appellant.

1. All of the account was barred except the last
item for sash weights. Plaintiff had no lien for the
structural iron and steel at the time it sold the sash.
weights and could have created none. Its right to do so
could not be created or revived by the sale of more ma-
terial. 32 N. W. 24; 63 N. W. 5; 57 N. W. 648; 56 Ark.
516; 33 Mo. App. 31; 7 Mo. App. 133.

2. Instruction 3 given at plaintiff's request errs
in that it assumes that the payment direct to Nelson for
any purpose at all would authorize a recovery for the
plaintiff. 85 Ark. 407. Instruction No. 7 is erroneous
for the same reason.

*Daggett & Daggett,* for appellee.

1. There was but one contract. When the proposal
made by appellee was accepted by Nelson on condition
that the sash weights be furnished, this constituted a
proposal on Nelson's part, and its subsequent accept-

ance by appellee constitutes the only contract between the parties.

2.  Instruction 3 and other instructions given at appellee's request, correctly declare the law as declared by this court. 77 Ark. 156; 85 Ark. 407; 84 Ark. 560; 99 Ark. 293.

WOOD, J., (after stating the facts). Under the undisputed evidence the contract to furnish structural iron and the contract to furnish sash weights should be treated as one entire contract for the purposes of having a lien declared upon the hotel building in suit. The acceptance by the contractor of the written proposal by the appellee to furnish structural iron for appellant's building was bottomed upon the condition that appellee would also furnish sash weights at a certain price. The rule that contemporaneous verbal agreements shall not be allowed to annul or vary the terms of a written contract is not applicable to the undisputed facts of this record. Here there is no attempt by one of the parties to a contract to vary its terms, but the evidence shows that the contracts, even though they were separate and independent, were entered into at the same time and each became binding at the same time.

The appellee was a material furnisher, and its account shows that it furnished the contractor for appellant's hotel building not only structural iron, but also agreed to furnish at the same time sash weights, which were just as much a part of the material with which the building was constructed as the structural iron and steel, although not nearly so great a part.

It is clear from the undisputed evidence that so far as the appellee and the contractor were concerned it was contemplated at the time the written contract for furnishing structural iron and the verbal contract for furnishing sash weights were entered into that they should be regarded as but one entire contract. At any rate, we are of the opinion that they should be so treated so far as the time for filing the lien is concerned.

The appellant, without objection, permitted the man-

ager of the appellee to testify as follows: "There was but one contract. There was a writing regarding the structural iron and Nelson signed an acceptance and put his name on the proposal, but he put it there upon that condition." That is, upon condition that appellee would "agree to furnish the sash weights at a certain price."

In a suit to declare the lien the obligations of this contract are collateral so far as the hotel company is concerned, the law fixes the time "within ninety days after the things aforesaid shall have been furnished," and, so far as appellant is concerned, we think, under the undisputed evidence, that the structural iron and steel were, in law, under the terms of the contract, furnished when the sash weights were furnished.

In *Kizer Lumber Co.* v. *Mosely,* 56 Ark. 544, it is said: "If the materials were furnished under one contract, he should file the account within ninety days after the last was delivered; but if the materials were furnished under separate and distinct contracts, it should be filed under each contract within the time limited."

The undisputed testimony, as we have stated, shows that the appellee and the contractor regarded the contract to furnish structural iron and steel and the contract to furnish sash weights as but one contract.

The court therefore correctly construed the contract, and did not err in giving instructions numbered 1 and 2 on behalf of appellee and in refusing the request for instruction numbered 1 on behalf of appellant.

Instruction numbered 3, given at the request of the appellee was erroneous and prejudicial. Taking all the testimony together, it was a question for the jury under the evidence as to whether or not appellant paid the contractor moneys in excess of the amount of appellee's claim which he used for his own private purposes.

The appellee (plaintiff below) contended that appellant paid Nelson, the contractor, sums of money largely in excess of plaintiff's claim, which he converted to his own use. Even if this were true, it would not, under the law, have entitled plaintiff to recover to the full amount

of its claim. In such case plaintiff (appellee) would not be entitled to the full amount of the claim, but only its *pro rata*, according to the rule announced in *Long* v. *Abeles*, 77 Ark. 156. Nor is it true that if appellant paid the contractor a less sum than the amount of appellee's claim which the contractor used for his own purposes, that the appellee (plaintiff) would be entitled to recover for this amount. In either event, the plaintiff (appellee) would be entitled to recover the amount of its *pro rata* with other lien claimants according to the rule announced in *Long* v. *Abeles, supra.*

The court correctly declared the law as to the *pro rata* in its instruction numbered 4, given at the instance of the appellee. But this instruction was in conflict with instruction numbered 3, and where there are conflicting instructions the jury would have no correct guide. That the appellant was prejudiced by the first part of instruction numbered 3, *supra,* is manifest from the fact that the jury did return a verdict in favor of the appellee for the full amount of its claim, whereas, if the jury had not been confused by the conflicting instructions and had the law been correctly declared they could only have returned a verdict for appellee, if they found the other facts in its favor, for the percentage of its claim when *pro rated* with the other lien claimants.

We find no prejudicial error in the giving and refusing of other prayers for instructions. We are of the opinion that they are in accord with the rule declared by this court in former cases. *Long* v. *Abeles, supra; Central Lumber Co.* v. *Braddock Land & Granite Co.,* 84 Ark. 560; *Cost* v. *Newport,* 85 Ark. 407; *Pratt* v. *Nakdimen,* 99 Ark. 293.

We find no prejudicial error in the rulings of the court upon the admission or rejection of testimony. Inasmuch as the case must be reversed and remanded for a new trial we deem it proper to say that the court should allow any testimony that may be offered tending to prove any valid liens existing against the hotel building of appellant as such testimony will be germane to

the question of *pro rating* the amount of appellee's claim with other lien claimants, and in determining what per cent, if any, appellee will be entitled to recover. See *Long* v. *Abeles,* and other cases *supra.*

For the error in granting the appellee's third prayer for instruction the judgment is reversed and the cause remanded for a new trial.