### AMERICAN TANK CO. v. CONTINENTAL & COMMERCIAL TRUST & SAVINGS BANK et al.

(Circuit Court of Appeals, Eighth Circuit. October 23, 1924.)

No. 6526.

1. **Mechanics' liens ⬥132(10)—Lien filed within 90 days after last item of continuing contract held to cover all materials furnished.**

Under Crawford & Moses' Dig. Ark., §§ 6906, 6910, 6922, where a contractor furnishes materials without specific agreement as to amount, or the time for delivery, and there was reasonable expectation that further material would be required, and he was afterwards called on from time to time to furnish the same, a mechanic's lien filed within 90 days after the last item was delivered secures the payment of all material furnished, including items furnished more than 90 days before filing of the lien.

2. **Courts ⬥366(1) — Federal courts follow state court's construction of state Constitution and statutes.**

The federal courts uniformly follow construction by highest court of state of its Con-

stitution and statutes, where no question of violation of federal Constitution or laws, or of general or commercial law, is involved.

3. **Mechanics' liens ⬥281(2)—Evidence held to show continuing agreement under which lien filed within 90 days after last item covered all material.**

Evidence *held* to show that oil tanks and fixtures furnished on oil lease were so furnished not under express contract for specific material, but under a reasonable expectation that further materials would be required, so that lien filed within 90 days after last item was furnished covered all materials, including those furnished more than 90 days prior to filing.

4. **Mechanics' liens ⬥118—Ten-day notice to owner before filing notice of lien not required of original contractor.**

Under Crawford & Moses' Dig. Ark., § 6917, original contractor seeking to claim mechanic's lien is not required to give 10-day notice before filing notice of lien on oil lease.

5. **Courts ⬥489(1)—Enforceable in federal courts notwithstanding jurisdictional requirement of state statute.**

Crawford & Moses' Dig. Ark., § 6925, providing that mechanics' liens shall be enforced in circuit court of county in which property is situated, *held* not to preclude a federal court from enforcing the lien, where the property and parties are drawn into its jurisdiction by reason of existing jurisdictional facts.

6. **Mechanics' liens ⬥260(4)—Enforcement in federal court not defeated because lienholder did not commence suit in state court within statutory time.**

Where oil leases on which a mechanic's lien was claimed for tanks and fixtures furnished were drawn into federal court by mortgage foreclosure proceedings, lienholder was entitled to enforce lien notwithstanding he did not commence suit within 15 months after filing lien as required by Crawford & Moses' Dig. Ark., § 6926, where within such time he was required to answer and did answer, claiming lien in federal court.

7. **Mechanics' liens ⬥25—Oil tanks and fixtures held "erections and improvements" within statute.**

Oil tanks and fixtures furnished on a mining lease *held* "erections and improvements" thereon within mechanic's lien statute (Crawford & Moses' Dig., Ark. §§ 6906, 6910).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Erect—Erection.]

8. **Mechanics' liens ⬥281(1)—Evidence held to show that materials were furnished to specific leasehold estates, not on personal credit of lessee.**

In proceedings to enforce lien on oil leases for oil tanks and fixtures furnished, evidence *held* to show that materials were sold and ordered placed upon respective leasehold estates, and were not sold in ordinary course of business on personal credit of lessee.

Appeal from the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Suit by the Continental & Commercial Trust & Savings Bank and another, trustees, to foreclose a mortgage and trust deed, against the Midco Petroleum Company. By ancillary bill the American Tank Company was made a party and answered, asserting mechanics' liens prior to the mortgage. From the decree rendered, the American Tank Company appeals. Reversed, and decree modified.

John H. Miley, of Oklahoma City, Okl. (Burford, Miley, Hoffman & Burford, of Oklahoma City, Okl., and Warner, Hardin & Warner, of Ft. Smith, Ark., on the brief), for appellant.

Thomas B. Pryor, of Ft. Smith, Ark., and Harry N. Weinberg, of Chicago, Ill. (Charles V. Powell, of Chicago, Ill., and Vincent M. Miles, of Ft. Smith, Ark., on the brief), for appellees.

Before SANBORN and LEWIS, Circuit Judges, and KENNEDY, District Judge.

SANBORN, Circuit Judge. The main question in this case is the extent of a mechanic's lien under the statutes of Arkansas upon the leasehold estates to prospect and operate for oil and gas upon the Rowland farm and the Baker farm in that state. The materials for which the lien is claimed consist of oil tanks, their appurtenances and fixtures erected or furnished by the American Tank Company, a corporation, at the request of the Midco Petroleum Company, another corporation, between the 9th day of May and the 10th day of October, 1921. The controversy in this case at the present time is between the tank company and the Continental & Commercial Trust & Savings Bank and William P. Kopf, trustees for the creditors of the Midco Petroleum Company, secured by the mortgage or trust deed of that company dated November 1, 1920, which was not recorded and of which the tank company had no notice until after the tanks, materials, appurtenances, and fixtures were erected and furnished and the notice of mechanic's lien therefor was filed. In a suit by the trustees against the Midco Company and others to foreclose the mortgage the trustees filed an ancillary bill, in which they alleged that the mortgage was superior in equity to the mechanic's lien claimed by the tank company, and caused that company to be made a party to that suit and to answer that bill. The answer of the tank company denied the superior equity of the creditors secured by the mortgage, asserted the superior equity of its mechanic's lien, and prayed that its lien be enforced in that suit. Upon final hearing the district court held that the mechanic's lien of the tank company was prior in time and superior in equity to the lien of the trustees under the mortgage to the extent of the tanks, appurtenances, and fixtures furnished within 90 days prior to October 10, 1921, and enforced the lien to that extent by its decree; but it held that a substantial part of the amount claimed could not be allowed its lien because it was not furnished more than 90 days before the lien was filed on October 10, 1921. Neither the trustees nor the Midco Company appealed from this decree. The tank company, however, did appeal, and assigned the court's refusal to allow it a lien for the tanks, etc., furnished more than 90 days prior to October 10, 1921, as error. As the court below has held that the trustees and other parties contesting the mechanic's lien stand in the shoes of the Midco Company, and that decision is not assailed, that company will be henceforth for brevity treated as the representative of all contesting the mechanic's lien and alone spoken of as the contestant in the subsequent discussion of this case.

The extent of the lien in controversy is conditioned by the correct construction of the statutes of Arkansas, which provide:

"Every mechanic, builder, artisan, workman, laborer or other person who shall do or perform any work upon, or furnish any material, fixtures, engine, boiler or machinery for any building, erection, improvement upon land, or upon any boat or vessel of any kind, or for repairing same, under or by virtue of any contract with the owner or proprietor thereof, or his agent, trustee, contractor or sub-contractor, upon complying with the provisions of this act, shall have for his work or labor done, or materials, fixtures, engine, boiler or machinery furnished, a lien upon such building, erection or improvement, and upon the land belonging to such owner or proprietor on which the same are situated, to the extent of one acre." Crawford and Moses' Digest of the Laws of Arkansas, § 6906.

"Every building or other improvement erected or materials furnished, according to the provisions of this act, on leased lots or lands shall be held for the debt contracted for or on account of the same, and also the leasehold term for such lot and land on which the same is erected." Section 6910.

"It shall be the duty of every person who wishes to avail himself of this act to file with the clerk of the circuit court of the county in which the building, erection or other improvement to be charged with the

lien is situated, and within ninety days after the things aforesaid shall have been furnished or the work or labor done or performed, a just and true account of the demand due or owing to him, after allowing all credits, and containing a correct description of the property to be charged with said lien, verified by affidavit." Section 6922.

Between May 2, 1921, and the 27th day of November 1921, the Midco Company was the owner in possession of oil and gas leases upon, and leasehold estates in, the Rowland farm and the Baker farm in Arkansas. On October 10, 1921, the tank company filed a notice of a mechanic's lien for $10,504.10 for work done, material and fixtures furnished, and erections and improvements made on the Midco Company's two leasehold estates at the request and on the orders of the Midco Company. The notice claimed a lien for $7,062.40 on the Rowland farm and $3,441.70 on the Baker farm. The court below entered a decree by which it allowed a lien on the Rowland farm for $3,441.70; but it refused to sustain the tank company's claim for a lien for items of labor and material furnished on the Rowland farm on May 10 and June 1, 1921, aggregating $3,620.70, and refused to sustain a lien for materials and labor worth $3,441.70 furnished and erected on the Baker farm on June 1, 1921, because these items were not furnished within 90 days preceding October 10, 1921, when the notice of lien was filed.

[1] Counsel for the tank company insist, and counsel for the Midco Company deny, that a mechanic's lien for these items was lawfully secured by the notice filed on October 10, 1921, under the provisions of section 6906, as that section has been construed by the Supreme Court of Arkansas. The construction of that section by that court is clearly stated in Kizer Lumber Co. v. Mosely, 56 Ark. 544, 20 S. W. 409, and that construction has been repeatedly affirmed in its later decisions. Midland Valley R. R. Co. v. Maron Belt & Nut Mfg. Co., 91 Ark. 108, 111, 120 S. W. 396; Marianna Hotel Co. v. Livermore Fdry. & Mch. Co., 107 Ark. 245, 253, 254, 154 S. W. 952; Tenney v. Sly, 54 Ark. 93, 95, 96, 14 S. W. 1091; Burel v. East Ark. Lbr. Co., 129 Ark. 58, 61, 62, 64, 65, 195 S. W. 378, 10 A. L. R. 1017.

In the Kizer Lumber Company Case the action was brought to enforce a mechanic's lien for numerous items of lumber furnished at different times for the construction of a building by the lienor to the amount of $184.10, only $21.26 of which was for lumber furnished within the 90 days before the filing of the notice of lien. The court de-

clared the local law of Arkansas under section 6906 on the question under consideration here in these words:

"If the materials were furnished under one contract, he should file the account within ninety days after the last was delivered; but, if the materials were furnished under separate and distinct contracts, it should be filed under each contract, within the time limited. Livermore v. Wright, 33 Mo. 31; 2 Jones on Liens, §§ 1431–1434, and cases cited. If, however, he began to furnish 'without any specific agreement as to the amount to be furnished,' or the time within which they were to be furnished, and there was a 'reasonable expectation that further material' would 'be required of him,' and he was 'afterwards called upon from time to time to furnish the same,' he should file it within ninety days after the last item was delivered. In such a case, if the materials were 'furnished at short intervals, and were appropriate to the condition and progress of the building,' a presumption would arise that it was understood from the beginning that the 'materialman was to furnish the same' for the construction of the building as the same should be required; and the account therefor should be considered as one continuous account and one demand; and the last item thereof would be 'the date from which the limitations of the time of filing' should be taken. Trustees v. Heise, 44 Md. 453; Jones v. Swan, 21 Iowa, 181, 184; 2 Jones on Liens, §§ 1435, 1436, and cases cited.

"When the defendant purchased of the plaintiffs the first lot of lumber, he made no contract to buy any other material, but said to them that he might need more. He did need it, and called upon them from time to time to furnish the same, which they did, and charged it to him on account. It was furnished at short intervals, and, it seems, was appropriate to the progress of his house, and he used it in building the same. The presumption is it was furnished under one contract; and the amounts due for the same should be treated as one demand. The consequence is, the time for filing the account for all the materials furnished commenced running from the date of the last item of the same, and plaintiffs have a lien for the whole of it."

[2] The federal courts uniformly follow the construction by the highest court of a state of its Constitution and statutes, where no question of a violation of the Constitution or laws of the United States or of general or commercial law is involved, and there is no such question in this case.

[3] Counsel for the tank company insist, and counsel for the Midco Company deny, that under the evidence in this case all the items in the notice of lien were furnished under one contract made before any of them were furnished. The tank company's counsel also contend, and counsel for the Midco Company deny, that, if there was no such contract, yet the facts of this case are analogous to those in the case of the Kizer Lumber Company, and bring it far within the rule stated in the last paragraph quoted from the opinion in that case. The arguments and authorities of counsel upon this question have been exhaustively examined and deliberately considered. All the evidence has been carefully read, and our conclusions are: First, there was no express contract before any of the materials and fixtures were furnished by the tank company so clear and definite in its terms that it bound either party to buy or sell any specific quantity of the materials, tanks, or fixtures, or to do any specific amount of work; but, as fast as any of the tanks, materials, and fixtures were furnished, or any of the work was done by the tank company, a contract by the Midco Company to pay for them was made. Cold Blast Transportation Co. v. Kansas City Bolt & Nut Co., 114 F. 77, 79, 80, 52 C. C. A. 25, 57 L. R. A. 696. Second, there was before and when the first item of tanks, materials, or fixtures specified in the notice of lien was furnished, and before the first work there specified was done by the tank company for the Midco Company, and continuously thereafter until all the items were furnished, a reasonable expectation that further tanks, materials, fixtures, and work would be required of the tank company by the Midco Company, and such further tanks, materials, etc., were afterwards furnished at the call of the Midco Company until the last item in the notice was furnished. The tank company furnished them from time to time at short intervals, and the Midco Company used them for the purpose for which it stated it would want them before any of them were furnished, so that the facts of this case bring it far within the line distinguishing valid mechanics' liens from the others established by the paragraphs quoted above from the opinion in the Kizer Lumber Company Case.

These facts from which this conclusion is drawn the preponderance of the evidence established: Prior to May 3, 1921, the Midco Company had acquired and owned leasehold estates for the extraction of oil and gas from the Rowland farm and the Baker farm; that company owned other leases in the vicinity of El Dorado, Ark.; contemplated the purchase of other leases; was drilling wells on some of its leasehold estates, and intended to produce oil and operate under its leases. E. W. Moutrey had charge of its operations in the vicinity of El Dorado, and J. B. Walker was the field manager of the tank company, which kept a stock of tanks, appurtenances, and other articles required in the operation of leases for the production of oil and gas on hand. In May, 1921, the Midco Company was drilling wells on the Rowland farm. Mr. Moutrey and Mr. Barr, who represented the Midco Company, then inquired of Mr. Walker of the tank company if that company would be able to take care of the Midco Company if it should want tanks, and Mr. Walker told them that the tank company had tanks in stock and others coming in, but that it did not know when it would be out, and suggested that it would furnish the Midco Company all the tanks it had in stock, and that the latter company keep it advised in anticipation of its wants. Mr. Walker, for the tank company, promised on notice in sufficient time to have on hand all the tanks the Midco Company needed, to haul them to their respective locations on the leasehold estates, and to erect them. Mr. Moutrey or Mr. Barr informed Mr. Walker that they anticipated using a large carload of tanks; that this was the amount they thought they should need. Pursuant to this conversation on the order of the Midco Company the tank company on or about May 10, 1921, furnished the materials and labor, and erected on the Rowland farm three steel tanks with stacks and flanges at their regular prices, aggregating $3,372.70, and on June 1, 1921, a gas trap for $248. It also furnished in the same way on June 1, 1921, upon the Baker farm, three steel tanks with stacks and flanges at their regular prices, aggregating $3,441.70. On August 22, 1921, it furnished and erected on the Rowland farm on the Midco Company's order three steel tanks with stacks and flanges at the price of $3,441.70. The court below allowed a lien for this last item because it was within the 90 days preceding the filing of the notice of lien, and disallowed the claim of lien for the preceding items. Mr. Walker testified that all these items were furnished pursuant to the first conversation, which he called the agreement, and that all the items furnished did not exceed a large carload. Asked, "Now, when these first tanks were furnished in May, 1921, did you understand that that concluded the contract which you

had with them to furnish tanks, or there would be more?" he answered, "Oh, no, no, sir; that we were to furnish all the tanks they used while they were operating there." As from time to time the Midco Company's orders for these various items were received, the tank company sent bills for the respective items stating the places and terms of payment therefor and the location of the erections or improvements. For example, it sent a bill for the items ordered May 10, 1921, consisting of two 1,000 barrel and one 500 barrel, bolted steel tanks with stacks and flanges on that day, and completed the erection of the tanks on the Rowland farm on May 16, 1921. Each tank and its appurtenances when completed, so far as its capacity to do its work was concerned, was separate from and operative independent of the other tanks and items claimed under the notice of lien.

[4-8] Counsel for the Midco Company in opposition to the conclusion to which this evidence has forced our minds argued and cited authorities, principally from the courts of other states and from the federal courts considering the statutes of other states than Arkansas upon these grounds:

First, that the evidence did not establish a single contract for all the items specified in the notice of lien which was binding upon both parties, but evidenced separate and independent contracts for the items ordered at different dates. But, while this objection might and doubtless would be fatal to a claim of mechanic's lien in an analogous case arising under the construction given to similar statutes in some of the other states (Berlet v. Lehigh Valley Silk Mills [C. C. A.] 287 F. 769; Sloss-Sheffield Steel & Iron Co. v. Payne, 186 Ala. 341, 64 So. 617; Baxter v. Cherryvale Oil Co., 111 Kan. 621, 208 P. 568; Fitzpatrick v. Ernst, 102 Minn. 195, 113 N. W. 4; Trustees of the German Lutheran Church v. Heise & Co., 44 Md. 453; Chase v. Garver Coal & Mining Co., 90 Iowa, 25, 57 N. W. 648), it is not tenable in this case because, as we have seen, the rule of property upon this subject has been finally established to the contrary by repeated decisions of the Supreme Court of Arkansas construing the mechanic's lien law of that state, and the decisions of the courts of other states and of the federal courts interpreting the statutes of other states may not prevail over that rule in the federal courts when enforcing the local law of that state. Their duty is to follow and enforce that rule in Arkansas, and thus avoid conflicting decisions over questions of local law and local rules of property.

Second, that the tank company did not give 10-day notice before filing the notice of lien to the owner or owners of the leasehold estates that it held a claim against the erections or improvements, the amount thereof, and from whom it was due, as required by section 6917. But that section reads: "Every person, except the original contractor, who may wish to avail himself of the benefit of the provisions of this act shall give ten days' notice before the filing of the lien," etc., and the tank company was the original contractor, and thus excepted from the requirements of that section.

Third, that section 6925 provides that "all liens created by virtue of this act shall be enforced in the circuit court of the county wherein the property on which the lien is attached is situated," and no action to enforce this lien has ever been commenced in that court. But in cases wherein, as in this case, a party by virtue of the amount involved and the residence and citizenship of the parties, or by virtue of other facts vesting jurisdiction in the federal court, is entitled to invoke its jurisdiction to enforce its lien, the power is vested in and the duty is imposed upon that court to enforce the civil rights and remedies of that party created by the statutes of the state and enforceable in the courts of that state. National Surety Co. v. State Bank, 120 F. 593, 56 C. C. A. 657, 61 L. R. A. 394; Darragh v. Wetter Mfg. Co., 78 F. 7, 14, 23 C. C. A. 609; Morrill v. American Reserve Bond Co. (C. C.) 151 F. 305, 316; In re Purvis (D. C.) 293 F. 102; Phillips on Mechanics' Liens (2d Ed.) § 313.

Fourth, that the tank company did not commence its suit to foreclose its lien within 15 months after the filing of the lien, as required by section 6926. But the notice of lien was filed on October 10, 1921. On May 20, 1922, far within the 15 months, the tank company, pursuant to the ancillary bill of the trustees in the mortgage and the action of the court making it a party to the foreclosure suit, filed its answer and cross-complaint, asserted its mechanic's lien, and prayed for its enforcement. No other suit was required by the statute to enforce this lien because that suit accomplished the purpose of the statute.

Fifth, that the tanks for oil and gas or gas traps such as were furnished in this case do not constitute "any material, fixtures, engine, boiler or machinery for any building, erection, improvement upon land," or the work of furnishing or erecting them, for which a lien may be claimed under the statutes of the state of Arkansas. But in our opinion this objection is far from tenable.

One of these 1,000 barrel tanks furnished and claimed under this lien was 22 feet in diameter, 16 feet in height and weighed about 4 tons. There is in our minds no doubt that such a tank and its appurtenances and fixtures placed upon land upon which oil was produced or was about to be produced was an erection and an improvement thereon.

Sixth, that the tanks, their appurtenances, the fixtures, and materials were sold in the ordinary course of business on the personal credit of the Midco Company without any single contract contemplating their location on specific realty. The evidence, however, is convincing that the tanks and other items were sold and ordered placed upon respective leasehold estates of the Midco Company on either the Rowland farm or the Baker farm. The bills for the items purchased stated on their faces the farm for which they were ordered, and the inference from this evidence that each item was purchased for a specific leasehold estate of the Midco Company is irresistible.

Let the part of the decree below which denied the tank company a mechanic's lien on the Rowland farm for $3,620.70 and allowed a lien for only $3,956.70 be reversed, and let the decree below be so modified as to allow the tank company a lien on that farm for $7,577.40 and interest at 6 per cent. per annum from September 22, 1921. Let that part of the decree which denied the tank company a mechanic's lien on the Baker farm for $3,441.70 and allowed a lien thereon for only $85 be reversed, and let the decree be so modified as to allow it a lien on that farm for $3,526.70 and interest thereon at 6 per cent. from September 22, 1921. Let that part of the decree which directs the proceeds of the property ordered to be sold, and any moneys in the hands of the receiver as the result of the operation of the property at the date of the confirmation of the sale to be applied "(2) To the payment of the sum of $4,041.70, together with interest thereon at 6 per cent. from the 22d day of September, 1921, to defendant American Tank Company for and on account of the lien of said American Tank Company," be so modified that it shall order such proceeds and moneys to be applied "(2) To the payment of the sum of $11,104.-10, together with interest thereon at 6 per cent. from the 22d day of September, 1921, to defendant American Tank Company for and on account of the lien of said American Tank Company," and let the tank company recover its costs in this case in this court.