ARKANSAS FOUNDRY COMPANY *v.* AMERICAN PORTLAND CEMENT COMPANY.

4-3526

Opinion delivered October 8, 1934.

780

*Barber & Henry* and *J. A. Tellier,* for appellant.
*Shaver, Shaver & Williams,* for appellee.

McHANEY, J. This is an action by appellant to enforce a mechanic's lien on the buildings and improvements constituting the plant of appellee, American Portland Cement Company, and on one acre of land on which a portion of said plant is located, on an account for $33,908.90 for labor and material furnished and sold by appellant to said appellee. The account with affidavit for lien was filed with the circuit clerk of Little River County July 11, 1930, and showed that material and labor were

furnished between February 28, 1929, and May 23, 1930, the last material sold being on the latter date. The affidavit for lien stated that the materials furnished were used in the construction of the buildings and improvements located on seven forty-acre tracts, describing them by legal descriptions in sections 16, 21 and 28 in township 12 south, range 32 west, which together made a tract of land one-fourth mile wide and one and three-fourths miles long running north and south. Within fifteen months thereafter, on June 15, 1931, appellant brought suit to foreclose its lien and for judgment against said appellee, and in apt time an answer of general denial was filed. Thereafter appellant on November 7, 1932, amended its complaint giving a detailed description by metes and bounds of the exterior boundary of the land on which the plant was constructed consisting of 3.34 acres actually covered by the improvements constituting the plant. It then described in detail the exterior boundary line of a strip of ground one foot wide surrounding the 3.34-acre tract above mentioned containing .99 of an acre. A second paragraph in said amendment describes by metes and bounds a one-acre tract on which a large portion of the cement plant is located, stating that the plant covers more than one acre. It prayed, first, that it be decreed a lien on the buildings and improvements and on the actual land covered by the plant and the .99 of an acre surrounding it; or, second, in the alternative, that it have a lien on the plant consisting of various connected buildings and plant equipment and upon the one-acre tract last above mentioned. Thereafter on November 21, 1932, a consent decree was entered giving appellant judgment against said appellee for $32,309.04, with interest at 6 per cent. from February 1, 1930, and a lien was fixed "upon the buildings, erection, improvements and plant of the American Portland Cement Company located upon the following described land, to-wit"; (describing the same seven forty-acre tracts as originally described in the complaint). The decree then continues: "And it is agreed between the plaintiff and defendant, in addition to the lien upon the said plant, that the plaintiff is to have a lien upon the following de-

scribed land upon which a portion of the plant is located, *i. e.*, upon one acre surveyed and described as follows:'' describing a tract of land lying nearly north and south, 726 feet long by 60 feet wide, and being the acre described in paragraph 2 of the amendment to the complaint. The decree further recites an agreement to stay execution for six months during which time the cement company might satisfy said judgment by paying appellant 50 per cent. thereof in cash and 50 per cent. in first mortgage real estate bonds, ''of the present issue,'' which should be a first lien against its properties after satisfaction of the judgment then rendered. Decree was entered accordingly.

The bonds mentioned ''of the present issue'' referred to bonds secured by a deed of trust dated October 6, 1931, and recorded October 13, 1931, in which appellee Duke was named trustee.

Appellee cement company failed to pay the judgment above mentioned within the six months as provided in said decree, and on May 22, 1933, appellant had a special *fieri facias* issued against the lands and improvements described in the decree of November 21, 1932, and, upon the motion of the cement company to recall same, the court made an order granting another stay of execution of three months from May 22, 1933, upon the payment to appellant of $500 in cash which was then made in open court, and if it should pay $5,000 at the end of three months, then another stay of three months should be granted, or six months from May 22, at which time it should pay appellant the balance of its judgment, interest and costs, else execution should issue therefor. Before the expiration of the time for payment of the $5,000, certain persons intervened, claiming title to certain machinery sold the cement company under title retaining notes and praying appellant be enjoined from levying execution on the property to which they claimed title. The court enjoined appellant from levying on the property claimed by interveners. Appellee Duke was made a party by interveners, and it developed on the hearing of appellant's motion to dissolve the temporary

restraining orders that he was claiming title superior to the lien of appellant. Thereafter issue was joined by appropriate pleadings between appellant and appellee Duke, the latter contending that he was a necessary party to all the proceedings had, and that, since he had not been made a party until October, 1933, he was not bound thereby; that no *lis pendens* notice was filed of the materialman's lien, and that he had no notice of appellant's claim of lien at the time of the execution and recording of the deed of trust to him; that the affidavit for lien filed by appellant on July 11, 1930, did not properly describe any particular one acre of land on which appellant sought to establish a lien and was void for that reason; that he was not a party to the suit to foreclose said lien and was not bound; that the complaint in said action did not describe the land sought to be charged with said lien, and that the amendment describing one acre was not filed until more than fifteen months after the affidavit for lien was filed and the proceedings thereunder were void; and other grounds to defeat the lien were set up. He alleged the mortgage to him is a prior and paramount lien on the plant and lands of the cement company because a valid mechanic's lien was not established.

On the issues thus joined between appellant and Duke, hereinafter referred to as appellee, the court found, on evidence in which there is very little if any dispute on the vital questions, that appellee's deed of trust is a valid and subsisting lien on the property of the cement company, subject to the title of certain interveners in certain specific personal property, and that it is prior and paramount to the lien and judgment of appellant as theretofore decreed by the court on November 21, 1932. It further held that appellant did not have a mechanic's or materialman's lien against said lands, premises, improvements or property of the cement company, and that its petition and action against appellee should be dismissed for want of equity. This appeal followed.

We have stated the case rather fully in order to give a history of the litigation. The questions involved are principally, if not entirely, questions of law which

have frequently been decided by this court. One of the contentions by counsel for appellee is that the description of the land in the affidavit for lien and in the original complaint was too indefinite and uncertain, did not describe any particular acre of land and, therefore, no valid mechanic's lien could be predicated thereon. Section 6906, Crawford & Moses' Digest, provides that persons furnishing labor or material for any building, erection or improvement upon land, "upon complying with the provisions of this act, shall have for his work or labor done or materials * * * furnished, a lien upon such building, erection or improvement, and upon the land belonging to such owner or proprietor, on which the same are situated to the extent of one acre." Section 6922, Crawford & Moses' Digest, provides that the lien claimant shall file with the circuit clerk "a just and true account of the demand due and owing to him, after allowing all credits, and containing a correct description of the property to be charged with said lien, verified by affidavit." The affidavit for lien filed states that the materials furnished, as shown by the itemized statement and duplicate invoices, "were furnished for and were used in the construction of the plant and buildings" of the cement company located on seven forty-acre tracts described, and a lien was claimed on said property, on both improvements and land. We are of the opinion that the affidavit for lien sufficiently described the improvements of the cement company as to afford information concerning the situation of the property to be charged with the lien, and that it is sufficient to enable any one familiar with the locality to identify the premises intended to be described with reasonable certainty, to the exclusion of others. This is the test many times announced and followed by this court. *Barnett Bros.* v. *Wright*, 116 Ark. 44, 172 S. W. 254; *Arkmo Lumber Co.* v. *Cantrell*, 159 Ark. 445, 252 S. W. 901; *Ferguson Lumber Co.* v. *Scriber*, 162 Ark. 349, 258 S. W. 353; *Georgia State Savings Ass'n* v. *Marrs*, 178 Ark. 18, 9 S. W. (2d) 785; *Brown* v. *Turnage Hardware Co.*, 181 Ark. 606, 26 S. W. (2d) 1114. In the case last cited 360 acres were

described in the affidavit and complaint by governmental subdivisions, and the decree adjudged "a lien upon one acre of the 360 acres * * * being that part upon which his homestead was situated." This court held the lien good against a charge of insufficient description. In that case, the late Chief Justice HART, speaking for the court, after quoting from *Arkmo Lumber Co.* v. *Cantrell, supra,* said: "In the application of this principle (relating to sufficiency of description as above announced), the fact that the claim filed under the statute described more land than is subject to the lien does not defeat the lien as to the amount of land subject thereto under the statute where the claim and the account filed with it, duly verified as required by statute, indicate the improvement so that it can be identified by persons of ordinary intelligence. To hold otherwise would subject substance to form, and deny the lien to persons clearly entitled thereto under the statute." If the improvements are sufficiently described, then the law fixes the amount of land to be covered by the lien, and it is a mere matter of surveying to determine the correct description.

Nor was it necessary to file a *lis pendens* notice. The lien statute provides what shall be done to preserve the materialman's lien, and, when the statute is complied with, all persons dealing with the property subject to such lien must take notice thereof. In this case, the mortgage was not executed until long after the lien was filed, and was not recorded until two days after the 15 months time in which to bring a suit to foreclose had expired. A subsequent purchaser must take notice of the right to file a lien within 90 days after any work or labor has been performed or material furnished, even though the record fails to show such lien. *Owen* v. *Continental Supply Co.*, 175 Ark. 741, 300 S. W. 398; *Bell* v. *Koontz*, 172 Ark. 870, 290 S. W. 597.

It is also insisted by appellee in support of the judgment of the trial court that appellant did not file its claim for lien within 90 days after the last material was furnished, and it is argued that the last materials furnished under the contract were in January or February,

1930, and that the two items furnished on April 29, and May 23, were not furnished under the original contract and were but "extras," and that since the affidavit for lien was filed on July 11, thereafter, the material furnished up to January or February, 1930, was not within the lien. The law in this State in this regard has been well settled since the case of *Kizer Lbr. Co.* v. *Mosely,* 56 Ark. 516, 20 S. W. 409, where the court said: "If the materials were furnished under one contract, he should file the account within ninety days after the last was delivered; but if the materials were furnished under separate and distinct contracts, it should be filed under each contract within the time limited. *Livermore* v. *Wright,* 33 Mo. 31; 2 Jones on Liens, paragraphs 1431-1434, and cases cited. If, however, he began to furnish 'without any specific agreement as to the amount to be furnished' or the time within which they were to be furnished, and there was a 'reasonable expectation that further material' would 'be required of him,' and he was 'afterwards called upon from time to time to furnish the same,' he should file it within ninety days after the last item was delivered. In such a case, if the materials were 'furnished at short intervals, and were appropriate to the condition and progress of the building, a presumption would arise that it was understood from the beginning that the 'materialman was to furnish the same' for the construction of the building as the same should be required; and the account therefor should be considered as one continuous account and one demand; and the last item thereof would be 'the date from which the limitation of the time of filing' should be taken." *Marianna Hotel Co.* v. *Livermore F. & M. Co.,* 107 Ark. 245, 154 S. W. 952; *Van Houten Lumber Co.* v. *Planters' National Bank,* 159 Ark. 535, 252 S. W. 614; *Planters' Cotton Oil Co.* v. *Galloway,* 170 Ark. 712, 280 S. W. 999. The undisputed proof shows that there was no contract for any definite amount of material, but on January 19, 1929, appellant submitted a proposal to the cement company to furnish it a lot of steel, consisting of an approximate number of tons for different purposes at a unit price of a specified

amount per cwt. No written or oral contract to furnish any particular quantity of material was entered into. The cement company accepted the proposal, and thereafter it began ordering out the material as the construction of its plant progressed. The fact that the word "extras" appeared on the invoices for the items shipped in April and May, 1930, is explained by the fact, as were a number of other invoices for items shipped in 1929 and prior to February, 1930, that they were less than carload lots and under such conditions the cement company was required to pay the freight thereon. The testimony shows that the items in the whole account constituted a continuing and running account up until May 23, 1930, and that there was reasonable expectation that these latter items would be required and would be ordered. We therefore hold that the affidavit for lien was filed in ample time, the ninety days running from the date of the last item on the account.

Another argument made to uphold the decree of the trial court is that "no sufficient action was brought within the statute of limitations." It is conceded that the suit was filed within fifteen months after filing the lien as required by § 6926, Crawford & Moses' Digest, but it is insisted that neither the affidavit for the lien nor the complaint disclosed any particular one acre of land or any particular building, erection or improvement upon which a claim for lien was made. We cannot agree with appellant in this contention. As we have already pointed out, the affidavit for a lien and the complaint sufficiently identified the improvements located upon the land, on both of which a lien was sought, on the land to the extent of one acre given it by law. The amendment to the complaint which did describe the one acre of land by metes and bounds was not the commencement of a new action, but only more particularly described the land upon which a lien was sought.

It is also contended that appellee Duke was a necessary party, and, not having been made a party by appellant, the proceedings as to him were void. We cannot agree. At the time appellant's affidavit for lien

was filed, and at the time the suit to foreclose the lien was filed no mortgage had been executed, and, of course, none recorded. The decree foreclosing said lien was entered thereafter. But the decree itself recognizes the fact that there was a mortgage at that time, but that it was inferior to the lien of appellant. Said decree speaks of "bonds of the present issue" and provides that the cement company might pay its debt partly with such bonds. The lien of the deed of trust or mortgage being inferior to that of appellant, appellee Duke's rights are not affected because he was not made a party, for he still had his equity of redemption, just as any other junior lienor had who was not made a party to the foreclosure of the prior lien.

Other incidental questions are argued in support of the decree, all of which we have carefully considered and find them without merit. We have reached the conclusion that appellant is entitled to a lien upon all the improvements into which any of its material or labor entered and into the one acre of land described and upon which a lien was fixed in the original consent decree set aside by the subsequent decree and that appellant is also entitled to a judgment against the American Portland Cement Company for the full amount of its debt, less the $500 payment made as above mentioned to obtain a stay of execution, with interest from the first day of February, 1930, at 6 per cent. per annum as decreed by consent in the original decree.

The decree of the chancery court will be reversed, and the cause remanded with instructions to enter a judgment for the amount above indicated, such judgment to bear interest from that date at 6 per cent., and to fix a lien upon all the plant, buildings, erections, improvements of the appellee cement company and for a lien upon the one acre of land as described and decreed in the said original decree which shall be superior and paramount to the lien of appellee Duke under his deed of trust, or any others claiming any interest under him or under said American Portland Cement Company since the accrual of the lien herein established, and that appel-

lant shall recover all its costs herein expended. It is so ordered.

JOHNSON, C. J., disqualified and not participating.