BYE, Circuit Judge,
dissenting in part.
I agree with the majority opinion that the lien is timely, but cannot agree with the majority’s determination as to the amount. I do not believe Falcon can encumber the four barges in UST’s possession with a lien in the amount of UST’s entire liability to Falcon even though Falcon can only prove that the barges collectively contain a fraction of unpaid steel. Because as a lien claimant, Falcon must establish the materials forming a basis for the lien were actually used in the four barges subject to the lien, the amount of Falcon’s lien cannot exceed $65,803.52, the amount of Falcon’s steel contained in the four barges.
The critical mistake in the majority opinion is the assumption that the dispute between the parties turns on a factual question about the extent of Falcon’s steel that went into the four barges in UST’s possession. This assumption is incorrect. The reality is that UST has successfully rebutted any presumption of actual use that resulted from Falcon’s delivery of steel to UST’s shipyard through the testimony of Jeffrey Cluck. See E.C. Barton & Co. v. Neal, 263 Ark. 40, 562 S.W.2d 294, 296 (1978) (explaining that, where a lien claimant demonstrates it delivered materials to the building site and the building which was supposed to incorporate such materials was constructed, the buyer can still rebut the resulting prima facie case of actual use by showing that the materials “were not so used”). Cluck’s testimony remains uncontroverted. Indeed, the district court never found that the entire $376,659.82 worth of Falcon’s steel went into the four barges at issue, and Falcon itself essentially conceded that the four barges contained only $65,803.52 of its steel. See Red Br. at 9 (“According to UST, because only $65,803.52 of Falcon’s steel is included in the unlaunched barges, Falcon’s lien is limited to that amount. Again, this is not the law.”).
Instead of a factual dispute, the parties’ disagreement is doctrinal. UST urges, and the district court agreed with this assertion, that the open-account rule of Kizer Lumber Co. v. Mosely, 56 Ark. 544, 20 S.W. 409, 410 (1892), obviates the need for tracing Falcon’s steel to the unfinished barges. In my view, this conclusion is not supported by Arkansas law. Arkansas cases, it is true, rely on the open-account doctrine to extend the time for filing a lien under Ark.Code Ann. § 18-44-117(a)(l) and to dispense with the requirement of filing multiple lien notices for discrete transactions between the same parties on a single project. See Streuli v. Wallin-Dickey & Rich Lumber Co., 227 Ark. 885, 302 S.W.2d 522, 523 (1957); Arkansas Foundry Co. v. Am. Portland Cement Co., 189 Ark. 779, 75 S.W.2d 387, 391 (1934). The Kizer rule, however, does nothing to alter the basic requirement that a lien claimant show “the materials for which he claims a lien were used in the improvement on which a lien was sought.” Del Mack Constr., Inc. v. Owens, 82 Ark.App. 415, 118 S.W.3d 581, 584 (2003); Ragsdell v. Gazaway Lumber Co., 11 Ark.App. 188, 668 S.W.2d 60, 61 (1984).
Where the debtor rebuts the presumption of actual use which arises by virtue of the supplier’s delivery of materials to the construction site, see Cent. Lumber Co. v. Braddock Land & Granite Co., 84 Ark. 560, 105 S.W. 583, 584 (1907), the claimant must demonstrate actual use in some other way and may not, absent the proper show *379 ing, file an undifferentiated materialmen’s lien with respect to the entire project. See, e.g., Sebastian Bldg. & Loan Ass’n v. Minten, 181 Ark. 700, 27 S.W.2d 1011, 1015 (1930) (disallowing the company’s materialmen’s lien for paint and oil delivered to the site for construction of two houses because the debtor was able to show the painter used his own paint and oil for the job and the amount of paint and oil furnished by the creditor was far in excess of the necessary amount). In this case, the open-account rule of Kizer could perhaps absolve Falcon from the responsibility of apportioning $65,803.52 as between the four barges, but it does not absolve Falcon from having to prove that the four barges indeed contain the entire $376,659.82 worth of its steel.
There are several reasons for courts’ insistence on demonstrating actual use as a prerequisite for obtaining a lien. First, the showing of actual use is necessary to give full effect to § 18 — 44—110(b)(1) of the Arkansas Code Annotated, which gives priority to the materialmen’s lien only to the extent the use of the materials enhances the value of the property. Del Mack Construction, Inc., 118 S.W.3d at 584 (“If the rule were otherwise, it would render meaningless ... section 18-44-110(b)(1) ... that the materialmen’s lien extends only to the enhancement of the value of the improvement for which the materials were used.”). Second, straddling the four barges with the full extent of UST’s liability to Falcon when they collectively contain less than twenty percent of Falcon’s unpaid-for steel could impinge on the rights of other vendors who supplied materials for the barges and must be treated on par with Falcon. Long v. Abeles & Co., 77 Ark. 156, 93 S.W. 67, 70 (1905) (discussing the rule of parity between materialmen’s liens in Arkansas). Third, the majority’s approach can prejudice rights of vessel owners like Flowers who could find themselves burdened by materialmen’s liens far outweighing the benefits conferred by the materials in question. Cf. Final Report of the Arkansas Task Force on Materialmen’s Lien and Bonding Notice Requirements, Bureau of Legislative Research, Little Rock, Ark., Nov. 1994, at 15 (noting the dilemma of landowners who find themselves ambushed by suppliers’ liens against their properties and recommending that “at some point within a specified period of time after supplying material, the unpaid supplier should be required to communicate the fact of non-payment directly to the landowner as a prerequisite to enforcing a lien”). Finally, where entry of a single lien could adversely impact other creditors, Arkansas courts have not hesitated to apportion the lien to reflect the amount of the particular creditor’s material contained in the property encumbered by the lien. See, e.g., Sebastian Building & Loan Ass’n, 27 S.W.2d at 1015 (reaffirming the practice of not apportioning the amount of the lien as between several houses built pursuant to one contract where there is “nothing to make it inequitable for the ... material-man to file a single lien on all the houses,” but refusing to do so where “other rights are to be affected”).
In sum, because Falcon has not proved actual use to the tune of $376,659.82, I would reverse the judgment of the district court and remand for further proceedings.