BB & B CONSTRUCTION CO., INC. *v.* F.D.I.C.,
Successor to Northwest Bank of Dallas, Texas

93-1203                                    875 S.W.2d 48

Supreme Court of Arkansas
Opinion delivered April 25, 1994

*Theodore C. Lamb*, for appellant.

*Wood, Smith, Schnipper & Clay*, by: *Ray S. Smith, Jr.* and *Lynn Williams*, for appellee.

JACK HOLT, JR., Chief Justice. This is a case involving a materialman's lien versus a prior encumbrance and the trial court's finding that the appellant BB & B Construction Company, Inc.'s (BB&B) lien for improvements to certain lands was subordinate to the encumbrances on the property held by the appellee, F.D.I.C., and that F.D.I.C. was entitled to all of the proceeds of sale after foreclosure proceedings. We agree with the trial court and affirm.

This dispute arose due to numerous sales transactions involving a tract of land in Hot Springs, Arkansas. The facts are not in dispute and have been stipulated to by the litigants:

| | |
|---|---|
| April 15, 1986 | James and Stella Hodges borrowed $600,000 from Dallas International Bank (later renamed Northwest Bank of Dallas, Texas) in exchange for a security interest on the property at issue. This mortgage was to secure the price of the land. |
| October 8, 1986 | The Hodgeses sell land to Charles Elliott, and he assumes their mortgage. A document extending the note & lien of the mortgage is executed by Elliott and filed March 6, 1987. |
| December 1986 | BB & B Construction performs work & expends material and labor on land: racetrack improvements & construction of a lake. |
| March 16, 1987 | BB & B files notice of its materialman's lien in the amount of $38,529.50. |
| March 20, 1987 | BB & B files a complaint against Elliott for recovery on the lien. |
| April 15, 1987 | Elliott conveys land to Lowry Investments by warranty deed which assumes the mortgage. Lowry borrows an additional sum from Northwest Bank bringing total debt to $950,000. |
| August 28, 1987 | Lowry executes a mortgage and secu- |

rity agreement to secure the $950,000 from Northwest Bank.

January 20, 1988  F.D.I.C., as successor to Northwest Bank, obtained a judgment against Lowry for $950,000 and obtains a decree of foreclosure on the land. The land was subsequently purchased by F.D.I.C. for $278,000.

June 23, 1989  A court order was entered finding that BB & B had a viable claim against the proceeds of sale and directed that $53,000 be bonded and held by the court clerk pending a determination of BB & B's priority.

August 10, 1989  BB & B received judgment of $38,529.50 plus ten percent interest from 3/16/86 against Charles Elliott.

Thereafter, BB & B filed a motion for judgment upon the lien, asserting that the court had already found that Mr. Elliott was liable to it for $38,529.50 and that the judgment was due in the amount of approximately $65,650 from May 16, 1986 through October 16, 1991. BB & B asked that the $53,000 held in the registry of the court be awarded to it as judgment based upon the materialman's lien.

F.D.I.C. in turn filed a motion for summary judgment claiming a priority right to the proceeds of the foreclosure sale and an award of all sums from the sale of the land, the proceeds being insufficient to satisfy both the mortgages and BB & B's lien. In claiming that its mortgage had preference over BB & B's lien, F.D.I.C. contended that a materialman's lien is superior to a prior mortgage only if the improvement is separate and distinct from the existing improvements or can be removed from the property without injury to the property, and since the improvements made by BB & B were not removable, the maxim "first in time, first in right" governed.

F.D.I.C. further insists that its mortgage, perfected April 15, 1986, was superior to BB & B's perfected materialman's lien

dated December of 1986, the date construction began. (Once a materialman properly files, his lien relates back to the date of the beginning of construction. *Planters Lumber Co.* v. *Jack Collier East Co.*, 234 Ark. 1091, 356 S.W.2d 631 (1962).)

The chancery court agreed with the F.D.I.C. and awarded it the $53,000 held in the registry. It is from this finding that BB & B appeals. For its sole argument for reversal of the court's decision, BB & B contends that the chancellor erred in her interpretation of Ark. Code Ann. § 18-44-101 and 110 and relevant case law. Section 18-44-101 provides in pertinent part:

> (a) Every mechanic, builder, artisan, workman, laborer, or other person who shall do or perform any work to or upon, or furnish any material, fixtures, engine, boiler, or machinery for any building, erection, improvement *to or upon land*, or upon any boat or vessel of any kind, or for repairing them, under or by virtue of any contract with the owner or proprietor thereof or his agent, trustee, contractor, or subcontractor, upon complying with the provisions of this subchapter, shall have, for his work or labor done, or materials, fixtures, engine, boiler or machinery furnished, a lien upon the building, erection, or improvement and upon the land belonging to the owner or proprietor on which they are situated to the extent of one (1) acre or the extent of any number of acres of land upon which work has been done or improvements erected.

(Emphasis added.) The legislature made clear that the "entire land. . .upon which any building, erection, or other improvement is situated, including that part of the land which is not covered with the . . . improvement . . . shall be subject to all liens created by this subchapter. "Ark. Code Ann. § 18-44-402 (1987). Also provided for is preference over prior liens, with some exceptions. In this regard, Arkansas Code Annotated § 18-44-110 provides:

> The lien for the things or work specified in this subchapter *shall attach to the buildings, erections or other improvements for which they were furnished or work was done in preference to any prior lien, encumbrance, or mortgage existing upon the land before the buildings, erections,*

*improvements or machinery were erected or put thereon.* However, in all cases where the prior lien, encumbrance, or mortgage was given or executed for the purpose of raising money or funds with which to make the erections, improvements, or buildings, then that lien shall be prior to the lien given by this subchapter.

(Emphasis added.)

Resolution of this appeal depends upon how § § 18-44-110 and 101 are interpreted. However, since the litigants stipulated that the Hodgeses' mortgage was to secure the purchase price of the land and neither party questions whether increases in the debt change the status of the mortgage to a construction money mortgage, we do not need to address this aspect of section 18-44-110.

Instead, we address BB & B's contention that because its lien is a materialman's lien, it has priority even over a mortgage filed of record prior to the time BB & B commenced work. BB & B does not have any authority to support its position in this regard, and the majority of its argument consists of distinguishing cases cited by the chancery court in reaching its decision.

In further support of its position, BB & B cites a change made in Ark. Stat. Ann. § 51-601 (now Ark. Code Ann. § 18-44-101) by Act 112 of 1969. Prior to Act 112, Ark. Stat. Ann. § 51-601 provided:

Every mechanic, builder, artisan, workman laborer or other person who shall do or perform any work upon, or furnish any material, fixtures, engine, boiler or machinery for any building, erection, improvement *upon land* . . . shall have for his work or labor done, or materials, fixtures, engine boiler or machinery furnished a lien . . . .

(Emphasis added.)

The language which BB & B stresses is "upon land," for in Act 112, the language was changed to read, "to or upon land. "BB & B claims that this alteration may only be interpreted to mean that the materialman's lien attaches to the land regardless of whether the improvement is removable, and this interpretation of Act 112, standing alone, seems to be true. However,

BB & B strains this interpretation by insisting that this alteration, read in conjunction with § 18-44-110, gives materialmen's liens for improvements to lands priority over all liens, even those perfected prior to the materialmen's lien.

BB & B is misguided in this respect. Lien statutes are a derogation to the common law and must be strictly construed. *Mehaffy & Asso., Inc.* v. *Brophy*, 249 Ark. 884, 462 S.W.2d 226 (1971); *Dix* v. *Olds*, 242 Ark. 850, 415 S.W.2d 567 (1967); *Lambert* v. *Newman*, 245 Ark. 125, 421 S.W.2d 480 (1968).

We have considered the difference in the meanings of "upon" and "to" as the language was used in Ark. Stat. Ann. § 51-601 (now § 18-44-101), noting that the legislature, by stating "improvements upon land" rather than "improvement to land" did not intend a lien to attach to the land so improved but confined it to the land "upon which the same are situated." *Lambert* v. *Newman*, 245 Ark. 125, 431 S.W.2d 480 (1968); *Dix* v. *Olds*, 242 Ark. 850, 415 S.W.2d 567 (1967).

Reviewing the foreword to Act 112 of 1969 (which amended § 18-44-101), we see that the legislature's purpose in changing the wording to "to or upon" was to include certain contractors under the umbrella of creditor protection. There is no suggestion in this language that the legislature, by making this change, intended, in the absence of removable improvements, to give materialmen priority over all liens:

> WHEREAS, recent court decisions have disclosed that certain contractors performing clearing, excavating, or ditching services in the process of constructing home sites were not heretofore granted the same lien as mechanics, materialmen, builders, and laborers; and
>
> WHEREAS, the contractors performing these vital and indispensable services should receive the same protection as others herein named.

Thus, this amendment makes improvements to land lienable. *Skipper* v. *Hoskins*, 247 Ark. 235, 444 S.W.2d 875 (1969).

We further observe that although § 18-44-101 provides which materialman shall receive protection by this lien as well as the nature and the extent of the lien, § 18-44-110 still

sets forth the priority of these liens to other encumbrances and the nature of the lien's attachment. Specifically, § 18-44-110 provides that the materialman's lien shall attach to the "building, erection or other improvements for which they were furnished or work was done *in preference to* any prior lien, encumbrance, or mortgage existing upon the land before the buildings, erections, improvements or machinery were erected or put thereon. "Since the preference attaches to the improvement, it follows that in order to take advantage of the priority, the improvement must be removable:

> Under the first in time, first in right rule . . . the . . . materialmen's lien will be subordinate to any encumbrance on the land and improvement thereon that attached prior to commencement of construction or repair for which the lien is claimed. The priority of the prior encumbrances extends not only to advances pursuant to which the mortgage was executed as security, but also to any future advances which the mortgagee was obligated to make under his agreement with the mortgagor. There is one exception to this rule. Where the . . . lien arises out of the construction of an improvement that is separate and distinct from any existing improvements, or if connected to an existing improvement, is so connected as to be removable without injury to the existing structure, the lien of the mechanic or materialman has priority over the prior mortgage lienholder as to the new improvement. However, the only remedy of the lienholder is removal of the improvement. The lienholder could, of course, pay off the prior encumbrance, be subrogated to the rights of the encumbrancer, and foreclose the lien against the entire property. Such mechanic's or materialmen's lien will be subordinate, even as to the improvement, to a prior mortgage executed for the purpose of financing the construction of the improvement.

Glenn E. Pasvogel, *Arkansas Debtor-Creditor Relations Handbook*, 2.3.1.6 (d) (1988)(citations omitted).

■ To support its position, F.D.I.C., as well as the chancellor, cite a number of pre-Act 112 of 1969 decisions. BB & B contends that these cases are not persuasive because they were decided prior to the change in § 18-44-110. We disagree. The

law remains that as between the lien of a mechanic or the furnisher of material and the lien of a prior mortgage, the lien of the former is superior only upon a separate building constructed on the land with the labor and material furnished, or to such an addition as is separable from the original building. *Page* v. *John E. Bryant & Sons Lumber Co.*, 232 Ark. 313, 335 S.W.2d 809 (1960); *see Morrilton Lumber Co.* v. *Groom*, 176 Ark. 520, 3 S.W.2d 293 (1928).

As mentioned, lien statutes are in derogation of the common law. Thus, the rights of a materialman and the enforcement of his liens are a matter of grace provided by legislative enactment. Although our General Assembly has expanded its umbrella of coverage to certain contractors who make improvements to the land lienable, such provisions are specific, narrow exceptions and extend only to the limits and conditions prescribed by legislation. It still remains that as between a materialman and a prior mortgagor, "first-in-time, first in right" is the law in Arkansas unless the materialman can remove the improvements from the land. See Glenn E. Pasvogel, Jr., *Construction Mechanics' & Materialmen's Liens: The Law in Arkansas* § 10-5 (1982).

Affirmed.

BROWN, J., concurs.

ROBERT L. BROWN, Justice, concurring. I cannot disagree with the result of the majority opinion. The priority statute (Ark. Code Ann. § 18-44-110 (1987)) only contemplates a priority lien for improvements *upon* the land. The sale-under-execution statute (Ark. Code Ann. § 18-44-130 (1987)) then refers to "removal" of the improvement after sale. Neither statute refers to improvements *to* the land like a pond or racetrack.

I do not believe that the General Assembly intended after 1969 that the lien status of those who have improved land by means other than buildings should be so limited. The apparent intent of the General Assembly in enacting Act 112 of 1969 (now part of Ark. Code Ann. § 18-44-101 (1987)) was to make improvements to the land lienable for all purposes under the subchapter. Yet, § 18-44-110 still refers only to materialmen's liens attaching to improvements "erected or put" on the land and, again, the execution statute contemplates physical removal of the improvement after sale.

The priority status of improvements to the land for work like permanent excavation work needs legislative clarification. Otherwise, the priority status of a lienholder who has improved land but not erected a structure on it will continue to be nil if the land has a preexisting mortgage lien.