2012 Ark. 243

**GROUND ZERO CONSTRUCTION, INC., Appellant**

v.

**WALNUT CREEK, LLC; R & R Partners, LLC; Rees Development, Inc.; Walnut Creek Properties, LLC; Marrs Electric, Inc.; Morrison Shipley Engineers, Inc.; Hutchens Construction Company; Traffic & Control Lighting Systems, LLC; and Metropolitan National Bank, Appellees.**

No. 12–15.

Supreme Court of Arkansas.

May 31, 2012.

Rehearing Denied Aug. 14, 2012.

review under the APA is not before us.

Kenneth S. Hixson, Fayetteville, for Appellant.

Clayborne S. Stone, John Kooistra, III, Williams & Anderson PLC, Little Rock, for Appellee.

ROBERT L. BROWN, Justice.

The issue on appeal is whether the 75–day lien notice sent by appellant, Ground Zero Construction, Inc. (Ground Zero), complied with the requirements of Arkansas Code Annotated section 18–44–115(e)(2)(C)(i) (Supp.2007), which requires that the notice contain a "general description of the labor, service, or materials furnished." We agree with the circuit court that the notice did not comply, and we affirm.

On July 27, 2006, appellee Metropolitan National Bank (Metropolitan)[1] and Walnut Creek Properties, LLC (Walnut Creek), which at that time was known as R & R Partners, LLC, entered into a Construction Loan Agreement in the amount of $13,150,000, for the development of a commercial subdivision in Benton County. Walnut Creek executed a promissory note in the principal sum of $13,150,000.[2] The note was secured by a mortgage, which conveyed a mortgage lien on the Walnut Creek property, and which was filed for record on July 28, 2006.

On June 19, 2007, Ground Zero entered into a contract with Rees Development, Inc. (Rees), for the construction and improvements of the water and sewer for the subdivision.[3] The total price for the construction and improvements of the water and sewer was $1,935,851.83. Of the total owed, Ground Zero had received a total of $1,651,738.97 by May 6, 2008, leaving a balance due of $284,112.86.[4]

On June 2, 2008, Ground Zero, by means of a 75–day–lien notice sent in accordance with section 18–44–115(e)(2), informed Rees and Walnut Creek that it was seeking a lien "in connection with sums owed and unpaid for labor and materials provided to you in connection with the Walnut Creek properties...." On January 20, 2009, when Ground Zero did not receive payment on the balance due, it filed a complaint against Walnut Creek, LLC; R & R Partners, LLC; Rees; Walnut Creek; Marrs Electric, Inc.; Morrison Shipley Engineers, Inc.; Hutchens Construction Company; Traffic and Control Lighting Systems, LLC; Metropolitan; and the City of Rogers in the Benton County Circuit Court. Ground Zero alleged in that complaint that the work performed by it was commenced on the property prior to any liens or mortgages being filed of record and that its lien constituted a first lien on the property, which was superior to any interest of the named defendants. On January 26, 2009, Ground Zero filed its first amended complaint.

The separate defendants, including Metropolitan, each entered appearances. Pertinent to this case, Walnut Creek, LLC; R & R Partners, LLC; Rees; and Walnut Creek, collectively naming themselves

---

1. Metropolitan is the only appellee who filed a brief in this appeal.

2. The promissory note was amended by a Change in Terms Agreement dated January 27, 2007, which increased the principal indebtedness under the note to $14,079,020.50.

3. The precise relationship between Walnut Creek and Rees is unclear from the record, as is the question of which entity or entities are owners of the property in question.

4. The last payment received by Ground Zero was in the amount of $250,000 and was issued to Ground Zero by Walnut Creek, LLC, on May 6, 2008. According to Walnut Creek's answer to the first amended complaint, Walnut Creek Properties, LLC, and Walnut Creek, LLC, are not separate entities.

"Walnut Creek Defendants," filed an answer to the First Amended Complaint on March 13, 2009. On March 6, 2009, in lieu of answering the complaint, Marrs Electric filed a motion to dismiss Ground Zero's lien claim, alleging that Ground Zero had not complied with the notice requirements of section 18–44–115 because Ground Zero failed to include a proper description of the work allegedly done on the property.

On May 5, 2009, the circuit court held a hearing on Marrs Electric's motion to dismiss. At the hearing, Ground Zero asserted that its description of its work in its lien notice complied with the notice requirements of the statute, and it added an alternative argument that the notice requirements of section 18–44–115(e)(2) do not apply to it because it is a contractor and not a material supplier or laborer. On May 21, 2009, after considering the arguments of counsel, the circuit court entered an order granting Marrs Electric's motion to dismiss Ground Zero's complaint as to the foreclosure of its lien. In that order, the circuit court stated that the notice requirements were to be strictly construed and found that Ground Zero failed to provide the description of work done as required by the statute. Ground Zero's contract action remained intact, however, and on September 9, 2009, Ground Zero was awarded judgment in the amount of $284,112.86 for breach of contract, plus prejudgment interest, costs, and attorney's fees.

On April 30, 2010, the circuit court entered an order wherein it found that the lien claims of Marrs Electric; Hutchens Construction Company; Morrison Shipley Engineers, Inc.; and Traffic and Lighting Systems, LLC, were superior to the mortgage held by Metropolitan. These lien claimants later released their liens against the property. In a decree and judgment entered on February 4, 2011, Metropolitan was granted a judgment against Walnut Creek in the amount of $15,016,836.27, plus interest, and it was specifically found that Metropolitan's mortgage lien was the first lien on the property and that the interest held by Ground Zero on account of the judgment rendered in its favor was subordinate to that mortgage lien. After a final order was entered, Ground Zero filed this appeal.

■ For its sole issue on appeal, Ground Zero urges that its description of the "labor, service, or materials furnished" contained in its notice of lien, which consisted of the phrase "in connection with . . . labor and materials provided to you in connection with the Walnut Creek properties," was an adequate description under section 18–44–115(e)(2)(C)(i). Ground Zero contends that the purpose of the materialmen's lien statute is to protect the owner of the land and, therefore, it would be unnecessary to require a company in Ground Zero's position to describe the labor or services provided more fully because Walnut Creek obviously knew what the claim involved. It continues that Walnut Creek had already paid Ground Zero over $1.6 million under the contract for its work on the water and sewer improvements in the subdivision. Ground Zero claims, in sum, that if the notice requirements are for the benefit of the owner, then the purpose, spirit, and letter of the statute were completely fulfilled by the description contained in the lien notice provided on June 2, 2008.

Ground Zero, alternatively, maintains that section 18–44–115(e)(2) is not even applicable in the instant case because the 75–day–notice requirement applies to material suppliers and laborers, and Ground Zero asserts that it is a contractor, not a material supplier or laborer. Ground Zero further emphasizes that notice is required to be given to both the owner *and the*

*contractor* under section 18–44–115(e)(2). Thus, Ground Zero maintains it would be absurd to apply the notice requirements to it as a contractor because it would then be required to give notice to itself.

> Section 18–44–115(e)(2) provides in part:
> (2)(A) No material supplier or laborer shall be entitled to a lien unless the material supplier or laborer notifies the owner of the commercial real estate being improved, in writing, that the material supplier or laborer is currently entitled to payment but has not been paid.
> (B)(i) The notice shall be sent to the owner and to the contractor before seventy-five (75) days have elapsed from the time that the labor was supplied or the materials furnished.
>
> . . . .
>
> (C) The notice shall contain the following information:
> (i) *A general description of the labor, service, or materials furnished,* and the amount due and unpaid;

Ark.Code Ann. § 18–44–115(e)(2) (Supp. 2007) (emphasis added).

There is no dispute among the parties that Ground Zero complied with all of the notice requirements set out in section 18–44–115(e)(2), apart from the requirement that the notice contain "[a] general description of the labor, service, or materials furnished." Although Ground Zero is correct in its assertion that this court has never construed this exact provision of the statute, we have had occasion to consider and interpret section 18–44–115 as a whole. *See Books–A–Million, Inc. v. Ark. Painting & Specialties Co.,* 340 Ark. 467, 10 S.W.3d 857 (2000). In *Books–A–Million,* this court held that strict compliance with the notice requirements of section 18–44–115 is required. *Books–A–Million,* 340 Ark. at 470, 10 S.W.3d at 859. We explained further that mechanic's liens are in

derogation of the common law and that any statute in derogation of the common law will be strictly construed. *Id.* Specifically, we observed that lien statutes are strictly construed because "they provide an extraordinary remedy that is not available to every merchant or worker." *Id.* at 470, 10 S.W.3d at 860 (quoting *Valley Metal Works, Inc. v. A.O. Smith–Inland,* 264 Ark. 341, 344, 572 S.W.2d 138, 140 (1978)).

Strictly construing section 18–44–115, Ground Zero's description of the labor, service, or materials furnished did not comply with the statute. As Metropolitan emphasizes, Ground Zero essentially provided *no* description at all. Instead, Ground Zero merely stated that the lien notice was being provided "in connection with sums owed and unpaid *for labor and materials* provided to you in connection with the Walnut Creek properties. . . ." (Emphasis added.) This "description" simply tracks the language of section 18–44–115(e)(2)(C)(i) but in no way actually describes the labor and materials provided by Ground Zero. It would have been a simple matter for Ground Zero to include a short, *general* description of the labor, service, and material provided by it because there was one contained in its contract with Rees. That contract read that the work being provided by Ground Zero was for the "construction of water and sewer for a commercial subdivision, Walnut Creek." Yet, Ground Zero failed to include any description whatsoever in its lien notice.

Ground Zero counters this point by contending that it complied with the "purpose, spirit, and letter" of the statute because Walnut Creek obviously knew what its claim concerned. This argument is not persuasive. As already noted, this court has made it clear that strict compliance, *not substantial compliance,* with the notice requirements is required in order to

create a valid lien. *See Books–A–Million,* 340 Ark. at 470, 10 S.W.3d at 859. If this court were to adopt the argument advanced by Ground Zero, it would be changing the level of compliance required under the statute. This will not do particularly in light of the fact that this would directly contravene the clear precedent set in *Books–A–Million.*

■ Ground Zero's alternative argument that its lien was valid because the 75–day–notice requirement of section 18–44–115(e)(2) do not apply to it as a contractor likewise fails because the circuit court did not rule on this issue. Specifically, although Ground Zero did not include this argument in its response to Marrs Electric's motion to dismiss, counsel for Ground Zero did make an oral argument to this effect at the hearing held before the circuit court. The only finding, however, made by the circuit court in its May 21, 2009 order in which it dismissed Ground Zero's complaint as to the foreclosure of its lien was that the lien notice "fails to

provide 'a general description of the labor, service, or materials furnished' as required by the statute."

This court has made it clear that it will not review a matter on which the circuit court has not ruled. *Ark. Lottery Comm'n v. Alpha Mktg.,* 2012 Ark. 23, 386 S.W.3d 400. Nor will this court presume a ruling from the circuit court's silence. *Id.; see also Wilson v. Dardanelle ⌐Dist. of Dist. Ct. of Yell Cnty.,* 375 Ark. 294, 290 S.W.3d 1 (2008). In short, because there was no ruling on this issue from the circuit court, and we will not presume a ruling from the circuit court's silence, we will not address this alternative argument raised by Ground Zero.

Affirmed.