2017 Ark. App. 658

**JMAC FARMS, LLC, Appellant**

v.

**G & C GENERATOR, LLC, Appellee**

No. CV–17–79

Court of Appeals of Arkansas,
DIVISION II.

Opinion Delivered: December 6, 2017

Cullen & Co., PLLC, Little Rock, by: Tim J. Cullen, for appellant.

Conner & Winters, LLP, Fayetteville, by: Todd P. Lewis and Michael D. Sutton, for appellee.

BART F. VIRDEN, Judge

Appellee G & C Generator, LLC (G & C), filed a complaint against appellant JMAC Farms, LLC (JMAC), and JMAC's contractor, McReynolds Enterprises, Inc., d/b/a McReynolds Water Systems (McReynolds), seeking to collect $66,200 for generators sold for the construction of poultry houses on JMAC's property and to foreclose on its materialmen's lien. Default judgment was later entered against McReynolds, and the remaining parties filed cross-motions for summary judgment. The Benton County Circuit Court granted summary judgment to G & C. On appeal, JMAC argues that G & C failed to strictly comply with the lien statutes. We agree with JMAC that G & C cannot have a lien against property it did not improve pursuant to Ark. Code Ann. § 18–44–101 (Repl. 2015). Because summary judgment was inappropriate, we must reverse.

## I. Lien Statutes

Arkansas Code Annotated section 18–44–101(a) provides the following:

Every ... material supplier ... who supplies ... material ... in the construction ... of an improvement to real estate, ... by virtue of a contract with the owner, proprietor, contractor, or subcontractor, or agent thereof, upon complying with the provisions of this subchapter, shall have, to secure payment, a lien upon the improvement and on up to one acre of land upon which the improvement is situated, or to the extent of any number of acres of land upon which work has been done or improvements erected.

Section 18–44–115(b)(4) (Supp. 2017) provides that no material supplier shall be entitled to a lien on commercial real estate unless it notifies the owner of the commercial real estate being constructed or improved in writing that the material supplier is currently entitled to payment but has not been paid. This notice shall be sent to the owner before seventy-five days have elapsed from the time the materials were furnished. Ark. Code Ann. § 18–44–115(b)(5)(A). The notice shall contain, among other things, "a description of the job site sufficient for identification" and a statement of notice set out in boldface type. Ark. Code Ann. § 18–44–115(b)(6)(D) & (E).

Further, section 18–44–117(a)(1) (Repl. 2015) provides that it shall be the duty of every person who wishes to avail himself or herself of the provisions of this subchapter to file with the clerk of the circuit court of the county in which the improvement to be charged with the lien is situated, and within 120 days after the things specified in this subchapter shall have been furnished, (A) a just and true account of the demand due or owing to him or her after allowing all credits, and (B) an affidavit of notice attached to the lien account. The lien account shall contain "a correct description of the property to be charged with the lien" verified by affidavit. Ark. Code Ann. § 18–44–117(a)(2).

## II. Procedural History

On February 1, 2016, G & C filed a verified claim, sworn statement, and notice of lien account, stating that it had furnished materials that were delivered to and incorporated into one or more improvements located on the following real property situated in Benton County, Arkansas:

A PART OF THE NE/4 OF THE NE/4 OF SECTION 15, TOWNSHIP 18 NORTH, RANGE 33 WEST, BENTON COUNTY, ARKANSAS, MORE PARTICULARLY DESCRIBED AS BEGINNING AT A POINT 542.85 FEET EAST AND NORTH 0°14 MINUTES WEST 929.12 FEET OF THE SOUTH-

WEST CORNER OF SAID NE/4 OF THE NE/4, SAID POINT BEING THE CENTERLINE OF A CREEK; THENCE SOUTH 0°14 MINUTES EAST 929.12 FEET; THENCE WEST 217.30 FEET ALONG THE SOUTHERN BOUNDARY OF SAID NE/4 OF THE NE/4 THENCE NORTH 0°14 MINUTES WEST 704.21 FEET TO THE CENTERLINE OF SAID CREEK; THENCE NORTHEASTERLY ALONG SAID CREEK CENTERLINE TO THE POINT OF BEGINNING. ALSO A PART OF THE NE/4 OF THE NE/4 OF SECTION 15, TOWNSHIP 18 NORTH, RANGE 33 WEST, BENTON COUNTY, ARKANSAS, MORE PARTICULARLY DESCRIBED AS BEGINNING AT A POINT 325.55 FEET EAST AND NORTH 0°14 MINUTES WEST 704.21 FEET FROM THE SOUTHWEST CORNER OF SAID NE/4 OF THE NE/4, SAID POINT BEING THE CENTERLINE OF A CREEK; THENCE SOUTH 0°14 MINUTES EAST 704.21 FEET; THENCE WEST 105.00 FEET ALONG THE SOUTHERN BOUNDARY OF THE NE/4 OF THE NE/4 THENCE NORTH 0°14 MINUTES WEST 594.56 FEET TO THE CENTERLINE OF SAID CREEK; THENCE NORTHEASTERLY ALONG THE CENTERLINE OF SAID CREEK TO THE POINT OF BEGINNING.

G & C stated that the property's address is 20190 Garman Road, Gentry, Arkansas 72732.[1] G & C stated that the materials were purchased by McReynolds, which was hired by JMAC to make certain improvements on its property using these and other materials. G & C stated that the materials had improved the owner's property. G & C claimed a lien on the property, including "any and all leaseholds, buildings, and improvements located there upon," in order to secure the sum of $66,200, which was due and owing to it for the materials located in and on the property. Attached to the lien account was an affidavit of pre-lien notice to comply with sections 18–44–114 and 18–44–115.

On July 25, 2016, G & C filed a verified complaint for judgment and decree of foreclosure of a materialmen's lien against JMAC and McReynolds, alleging that it had entered into a contract with McReynolds in 2015 for the purchase of two generators and four transfer switches[2] for the sum of $66,200 and that the materials were delivered to and incorporated into certain improvements located on JMAC's property, described by the legal description set forth above and an address of 20190 Garman Road, Gentry, Arkansas 72732. Among other causes of action, which were subsequently dismissed, G & C sought foreclosure on its materialmen's lien. G & C alleged that it had notified JMAC of the outstanding debt and of its intention to file the lien by serving the requisite notice; that G & C had filed a verified claim, sworn statement, and notice of lien account against the property; that the lien was filed on February 1, 2016; that G & C had provided copies of the lien to McReynolds and JMAC, along with another demand for payment; and that its lien was valid and enforceable.

JMAC answered G & C's complaint, generally denying paragraph seven, which set forth the property's legal description and address, and raising the affirmative

---

1.  The road is spelled "Garman" at times and "Garmon" at other times, but we will use the former spelling when referring to this road.

2.  In its answer, JMAC asserted that it had purchased three generators and eight transfer switches.

defense of payment. McReynolds neither answered G & C's complaint nor appeared to defend, and default judgment was entered against it.

On July 29, 2016, G & C filed a notice of lis pendens, asserting that the land encumbered by such materialmen's lien and on which the judgment and decree of foreclosure was sought is located in Benton County, Arkansas. It was described using the metes and bounds legal description set out above and the address of 20190 Garman Road.

On August 29, 2016, JMAC filed a motion for summary judgment, accompanied by an affidavit from Paul Geurin, a member of JMAC, attesting that JMAC had constructed ten new poultry houses and renovated two old poultry houses on five different tracts of real property that it owns; that JMAC purchased materials from McReynolds, which were incorporated into the new construction and located on the same parcel of real property as the newly constructed poultry houses; and that JMAC had paid McReynolds in full for the materials. JMAC further alleged that there were no poultry houses on the tract of real property against which G & C had filed its materialmen's lien; that only a residence and barn were located on the property against which the lien was filed; that 20190 Garman Road was not the address for the property on which JMAC's poultry houses are located; that the Benton County Tax Assessor's website associated the property on which the poultry houses sat with the address of "Garman Road" or "20178 Garman Road"; and that its broiler-production contract with Tyson Foods showed an address of "20296 Garman Road." JMAC attached several aerial photos of the properties from the assessor's office, the invoice for the materials that it had purchased from McReynolds, a cashier's check and personal check showing payment in full for the materials, a deed plot for the property charged with the lien, and its broiler-production contract with Tyson.

On September 21, 2016, G & C filed a motion for summary judgment and brief in support, incorporating aerial photos of JMAC's property, including the poultry houses and the property on which the residence and barn sat, and photos of the mailbox identifying the address 20190 Garman Road and depicting the driveway at several angles, showing the poultry houses along each side of the driveway leading to a residence.

Following a hearing, the trial court entered an order granting summary judgment to G & C and denying JMAC's motion for summary judgment. JMAC appeals from that order. The trial court subsequently entered an order staying enforcement of the decree of foreclosure pending appeal.

### III. *Summary–Judgment Standard of Review*

Summary judgment is to be granted only when it is clear that there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Corn Ins. Agency, Inc. v. First Fed. Bank of Ark., F.A.,* 88 Ark. App. 8, 194 S.W.3d 230 (2004). Normally, on a summary-judgment appeal, the evidence is viewed most favorably for the party resisting the motion and any doubts and inferences are resolved against the moving party, but in a case in which the parties agree on the facts, we simply determine whether the appellee was entitled to judgment as a matter of law. *Id.* When parties file cross-motions for summary judgment, as was done here, they essentially agree that there are no material facts remaining, and summary judgment may be an appropriate

means of resolving the case. *Id.* The filing of cross-motions for summary judgment, however, does not necessarily mean that there are no material issues of fact in dispute. *Id.* As to issues of law presented, this court's review is de novo. *Crafton, Tull, Sparks & Assocs., Inc. v. Ruskin Heights, LLC*, 2015 Ark. 1, 453 S.W.3d 667.

## IV. *Discussion*

■ JMAC argues that the property against which G & C filed its lien is not the property on which the poultry houses are situated. JMAC asserts that G & C thus failed to strictly comply with Ark. Code Ann. § 18–44–115(b)(6)(D), which requires that G & C give notice of the lien with "a description of the job site sufficient for identification," and Ark. Code Ann. § 18–44–117(a)(2), which requires that G & C file a lien account containing "a correct description of the property to be charged with the lien." JMAC further argues that G & C cannot, pursuant to Ark. Code Ann. § 18–44–101(a), have a lien against property on which it has made no improvements.

As a preliminary matter, the parties disagree as to the proper construction of the lien statutes. JMAC argues that strict compliance is required, while G & C maintains that "pin-point precision is not required to satisfy the property description requirement," relying, in part, on *E.O. Barnett Brothers v. Wright*, 116 Ark. 44, 172 S.W. 254 (1914), as well as *Westside Galvanizing Services, Inc. v. Georgia–Pacific Corp.*, 724 F.Supp. 644 (W.D. Ark. 1989), *Arkansas Foundry Co. v. American Portland Cement Co.*, 189 Ark. 779, 75 S.W.2d 387 (1934), *Ferguson Lumber Co. v. Scriber*, 162 Ark. 349, 352–53, 258 S.W. 353, 355 (1924), and *In re Horton Vaults, Inc.*, 109 B.R. 356 (E.D. Ark. 1989).

Our supreme court has most recently held in *Ground Zero Construction, Inc. v. Walnut Creek, LLC*, 2012 Ark. 243, 410 S.W.3d 579, and *Books–A–Million, Inc. v. Arkansas Painting and Specialties Co.*, 340 Ark. 467, 10 S.W.3d 857 (2000), that the materialmen's-lien statutes are in derogation of the common law and therefore are strictly construed, thus requiring strict compliance. Although the court focused on the statutory-notice requirements of section 18–44–115 in *Ground Zero* and *Books–A–Million*, the supreme court said generally that "[o]ur lien statutes are in derogation of the common law, and we construe them strictly since they provide an extraordinary remedy that is not available to every merchant or worker." *Books–A–Million*, 340 Ark. at 470, 10 S.W.3d at 860 (citing *Valley Metal Works, Inc. v. A.O. Smith–Inland*, 264 Ark. 341, 344, 572 S.W.2d 138, 140 (1978)); *see also BB & B Constr. Co., Inc. v. F.D.I.C.*, 316 Ark. 663, 875 S.W.2d 48 (1994); *Christy v. Nabholz Supply Co., Inc.*, 261 Ark. 127, 546 S.W.2d 425 (1977).

■ Before determining whether a lien has been perfected, we must determine whether the property itself was subject to a lien. G & C has consistently described JMAC's property using both the legal description set forth in section II of this opinion and the address 20190 Garman Road. The record shows that the address and legal description relate to the same piece of property. Arkansas Code Annotated section 18–44–101(a) provides that a material supplier shall have "a lien upon the improvement and on up to one acre of land upon which the improvement is situated." The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Massey v. Fulks*, 2011 Ark. 4, 376 S.W.3d 389.

JMAC contends that G & C claimed a lien against specifically described property

on which no improvements are situated and on which no work was performed. We agree. G & C furnished materials for the poultry houses on JMAC's property. The legal description on the lien account filed with the clerk, which requires a "correct description," is for a piece of property on which only a house and barn sit, i.e., there are no poultry houses and thus no improvements. We hold that, according to the plain language of sections 18–44–117(a)(2) and 18–44–101(a), G & C cannot have a lien on property on which it has made no improvements.

### V. *Conclusion*

We conclude that the plain language of section 18–44–101(a) provides that G & C shall have a lien "upon the improvement and on up to one (1) acre of land upon which the improvement is situated." G & C cannot have a lien against property on which no improvements were made. Accordingly, G & C was not entitled to judgment as a matter of law, and we must reverse. We need not reach JMAC's other arguments.

Reversed.

Glover and Murphy, JJ., agree.